FARMER, Judge.
We reverse a conviction for aggravated battery with a firearm and remand for a new trial. It was error for the trial judge to permit the victim to testify that there was “talk amongst the people in [the] neighborhood” that defendant intended to kill him.
Brown and James, brothers-in-law, were involved in a dispute over James stealing some crack cocaine from Brown. In a confrontation outside a grocery store Brown shot James, paralyzing him. Brown testified that the shooting was self defense.
Although two bystanders testified, neither was present during the confrontation between the two men immediately before the shots were fired. One was across the street from the store and the other was inside the building. A neurosurgeon testified that at the time of the shooting, James was six feet, to six feet-three inches tall, 215-230 pounds with but 10% in body fat, in good physical shape, and appeared to have regularly exercised.
James testified that about two weeks before the shooting he broke into Brown’s car and stole about 150 rocks of crack cocaine to sell. Brown found out about the theft the same night. Although Brown ultimately recovered the cocaine, he would not give James a chance to apologize. James also testified as follows:
*850 “Q: During [the two week period of time leading up to the day of the shooting] did you begin to hear talk about things that [Brown] was supposedly saying about you?
“A: Yes
“Q: And were those things causing you some concern, or some fear?
“A: Yeah.
“Q: What sort of things were you hearing?
“A: I was hearing that he say—
“[Defense Counsel]: Objection, hearsay.
“COURT: Sustained.
“[Prosecutor]: Judge, does not go to the truth of the matter asserted it goes to the state of mind of the individual.
“COURT: Your response?
“[Defense Counsel] It’s hearsay, Judge.
“COURT: Okay, overruled.
“Q: What sort of things were you hearing, Calvin?
“A: I hear he was going around saying he was going to shoot me, he was going to bum me.
“Q: And this was talk amongst the people in your neighborhood?
“A: Yeah, right.
“Q: He hadn’t told you that directly?
“A: No.”
James then proceeded to describe his version of the shooting.
Brown testified he had previously told James that he was going to tell his parents that he had a crack problem, and James became angry with him. James responded that if he got kicked out of his house he would kill Brown. Brown said that he was not a fighter, that he was physically inferior to James, that he was afraid of him and that James carries a gun. Brown said that he had also seen James knock someone out with one punch and break the jaw of a larger man. He obtained a gun because he was afraid of James. In his version of the events, James was the aggressor and Brown acted in self defense. No gun was found in this case, and the investigating officer saw no other weapons in the area. An hour and a half later, Brown turned himself in at the police station.
Under section 90.801(l)(e), Florida Statutes (1995),[1] hearsay is a statement other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. Hearsay testimony that does not fall within a recognized exception is inadmissible. § 90.802. Moreover where, as in this instance, the out-of-court statement involves hearsay within hearsay each part of the combined statements must be within an exception to be properly admitted. § 90.805.
The state argues that the statements were not hearsay because they were offered to prove why James went to talk to Brown and not to prove the truth of the matter asserted. In State v. Baird, 572 So.2d 904 (Fla.1990), the Supreme Court held:
“an out-of-court statement which is offered for a purpose other than proving the truth of its contents is admissible only when the purpose for which the statement is being offered is a material issue in the case.”
572 So.2d at 907. But James’s reason for confronting Brown is irrelevant to Brown’s shooting of James. And although it might be relevant to support Brown’s claim of self defense, it was not Brown who sought to introduce the statements but the state during its principal case. Under these circumstances, it did not go to any material issue.
The state’s contention — that the statements were not introduced to prove the truth of the matter asserted — also has the ring of disingenuousness. If the claim of self defense was itself a pretext because Brown had earlier stated his intent to shoot James, then the statements to that effect were obviously intended by the prosecution to be believed by the jury. It is impossible therefore to give any credence to the attempt to justify their admission by saying they were being adduced merely to show James’s intent in confronting Brown.
Nor is the statement admissible to show state of mind. § 90.803(3)(a). The state offered the statement to show the victim’s state of mind, not the declarant’s (Brown) as required by the statute. The cases applying this exception involve circumstances where *851 the declarant victim was dead. See Peterka v. State, 640 So.2d 59 (Fla.1994), cert. denied, 513 U.S. 1129, 115 S.Ct. 940, 130 L.Ed.2d 884 (1995); State v. Bradford, 658 So.2d 572 (Fla. 5th DCA1995).
We are unable to find this error harmless. The case essentially turned on the testimony of James and Brown, a traditional swearing match. If the state wanted to bolster its case by earlier statements of Brown that he intended to shoot James, then the state should have produced a witness who actually heard Brown make the assertion. It could not do so simply by having James say that other people had heard Brown do so.
REVERSED AND REMANDED FOR NEW TRIAL.
GUNTHER, J., concurs.
STONE, C.J., concurs specially with opinion.

. All statutory references are to Florida Statutes (1995).